No. 25,234.

SCHOOL DISTRICT No. 78; LINN COUNTY, *Plaintiff*, v. JESS W. MILEY et al., as the Board of State School Fund Commissioners; and E. T. THOMPSON, as State Treasurer, *Defendants*.

SYLLABUS BY THE COURT.

1. MANDAMUS—*Demand of School District for Compromise and Settlement of Its Unmatured Bonded Indebtedness—Consent of School Fund Commission Must Be First Obtained.* In the statute authorizing school districts to compromise and refund their bonded indebtedness "upon such terms as can be agreed upon" the agreement referred to is one between the district and the owner of the bonds, and the fact that the bonds are held by the school fund commission, which is an agency of the state and which acquired them by accepting an offer at par which the statute required to be made, does not authorize a compromise and refund without its consent.

2. SAME—*Right of School District to Refund Its Bonded Indebtedness Before*

*Maturity—Interpretation, of Statute.* The statutory provision that if a school district shall have accumulated in the treasury sinking fund enough to meet in, full before maturity any of its bonds held by the school fund commission it may pay them off and take them up, does not require the commission to accept payment for unmatured bonds from funds to be procured by the issuance and sale of new bonds at a lower rate of interest.

3. SAME—*Amount Originally Paid for Bonds Does 'Not Require Their Cancellation on Demand.* The fact that in buying bonds from a school district the school fund commission did not include in its payment a sum covering accrued interest forms no basis for requiring it to cancel the bonds before maturity upon payment of the principal.

Original proceeding in mandamus. Opinion filed November 10, 1923. Motion filed to quash alternative writ sustained.

*Judson S. West,* of Kansas City, *Justin D. Bowersock,* and *Robert B. Fizzell,* of Kansas City, Mo., for the plaintiff.

*C. B. Griffith,* attorney-general, and *W. C. Ralston,* assistant attorney-general, for the defendants.

The opinion of the court was delivered by

MASON, J.: In 1921 the board of state school fund commissioners purchased from school district No. 78 of Linn county, at par, bonds of that district bearing 6 per cent interest, dated July 1 of that year, $1,000 maturing each year until 1935 and 1936 when $7,500 and $8,000 respectively became due. The district is now able to borrow money at a lower rate of interest. It has demanded of the school fund commission that it either accept payment of these bonds, the money to be obtained by the district through the sale of new bonds for which it has a purchaser at 4¾ per cent, or that it accept new bonds bearing that interest in exchange for those it now holds. The commission having refused the demand this proceeding is brought to require compliance with it. An alternative writ of mandamus having been issued the case is heard upon a motion to quash it.

1. The plaintiff relies upon a statute authorizing a school district (as well as other public bodies) "to compromise and refund its bonded indebtedness . . . upon such terms as can be agreed upon, and to issue new bonds . . . in payment for any sums so compromised." (Gen. Stat. 1915, § 642.) Obviously the phrase "upon such terms as can be agreed upon" means that the arrangement must be the result of an agreement between the district and the holder of the bonds. The plaintiff concedes that this is the case where the bonds are held by an "outside party," but argues

School District v. School Fund Commissioners.

that because the school fund commission is a mere agency of the state it cannot assert a vested contract right with respect to the maturity of the bonds. Because it is an agency of the state the commission can acquire no contractual right that the legislature can not take away (*Little River Township v. Reno County*, 65 Kan. 9, 68 Pac. 1105; *City of Winfield v. Court of Industrial Relations*, 111 Kan. 580, 207 Pac. 813)·, but we see no reason why in other respects the contract between the district and the commission is not as binding between the parties as any other. In the absence of an agreement to that effect or of a statute giving the privilege the maker of a note as a matter of course cannot escape liability for interest for the full period contracted for by offering to pay the principal before maturity. If the provision of the statute which the plaintiff invokes is to be construed as authorizing the school district to refund its bonds regardless of the consent of the school fund commission, merely because the contract clause of the federal constitution would not be thereby violated, it might with equal reason be held to give that authority although the bonds were owned by an individual, for the legislature could impose such a condition upon bonds issued after the enactment of a statute to that effect, wherever the ownership might be.

The plaintiff suggests that inasmuch as the district was required to offer its bonds to the school district at par (Gen. Stat. 1915, § 10884), when as the alternative writ recites they were worth more, the element of bargain and sale did not enter into the transaction. The district in fixing the rate at 6 per cent, knowing that the commission had the right to take the bonds at par, elected to make an offer on that basis, which was accepted. In the plaintiff's brief it is said: "Still less did the date of maturity of plaintiff's bonds enter into the transaction. Such date had nothing whatever to do with the purchase price." The time the bonds were to run· was one of the elements which the commission necessarily considered in deciding whether to buy the bonds. The school district having chosen to issue and sell the bonds under the existing statutes, which became a part of the contract, is bound by the obligation it assumed.

2. A portion of a statute affecting the relation between the school fund commission and municipal bodies which have sold their bonds to it reads:

"If at any time any board of education, school district, township, county or city of any class shall have accumulated in the treasury sinking fund sufficient

to pay in full any bond or bonds issued by such board of education, school district, township, county or city of any class before the maturity, the state permanent school fund, state normal school fund, or the university permanent school fund, or agricultural college endowment fund being the holders thereof, such board of education, school district, township, county or city of any class may pay the same to the state treasurer at the time any interest coupon is due, and take up such bond or bonds." (Gen. Stat. 1915, § 9267.)

By this provision the legislature has given the school district the privilege of extinguishing by payment, regardless of the date of maturity, so much of its bonded indebtedness as can be met from accumulations in the treasury sinking fund, to provide which it is required to levy an annual tax. (Gen. Stat. 1915, § 9181.) To extinguish its debt however is a very different thing from merely transferring the obligation to another creditor. The district is not in a position to pay off the old debt except by incurring a new one, and although the several steps should be taken at the same time and the cash for the payment of the present bonds be made at once available from the sale of new ones, the transaction would still be an exchange of creditors and not a reduction of the principal of the debt. We hold that the commission is not required either to reduce the interest contracted for or in effect to sell the bonds to a purchaser who is willing to do so. This view merely means that the contract is to be enforced as made. Any apparent hardship to the district which it involves is a consequence of the rate of interest having been fixed higher than the market required, or of the market having changed.

3. The writ also recites that the commission paid for the bonds only their face value, while at the time payment was made interest had accrued to the amount of $285. This may entitle the district to receive that additional amount but does not affect the right of the commission to keep and enforce the bonds.

The motion to quash the alternative writ is sustained.