## IN RE GUARDIANSHIP OF NETTIE HUDSON.
## W. T. CORWIN v. C. L. WILLYARD.[1]

July 16, 1948.

No. 34,650.

[1]Reported in 33 N. W. (2d) 848.

*Plato E. Sargent,* for appellant.

*H. J. Edison* and *Oscar C. Ronken,* for respondent.

MATSON, JUSTICE.

Appeal from an order denying appellant's motion for a new trial.

The proceeding is one by appellant as special guardian to have allowed a supplemental final account covering $731.50 in expenses in-curred by him prior to the appointment and qualification of respond-ent as general guardian, and further to have allowed another sup-plemental final account for $546.90 for expenses incurred by him subsequent to the appointment and qualification of respondent as such general guardian.

Appellant, W. T. Corwin, was appointed special guardian of the estate of Nettie Hudson on September 27, 1942, by the Goodhue county probate court. On February 15, 1944, the same court made

an order restoring Nettie to capacity, terminating the guardianship, and requiring appellant to file his final account within 14 days. On the 13th day appellant appealed from the order of restoration. On the same day, Nettie caused him to be served with an order to show cause why he should not dismiss his appeal and file his final account. On March 9, 1944, pursuant to the order to show cause, the probate court entered an order providing "that due to the failure of the guardian to file an account" he was removed as such special guardian and should file his final account by March 23, 1944. This very same order then qualified the order of removal by stating that the special letters of guardianship "be and the same hereby are cancelled, except as said letters might apply to said appeal, now pending, relative to said restoration to capacity." Obviously, this order did not remove appellant as special guardian or cancel his letters, but served only to restrict the guardianship purposes for which he might continue to function. At the outset, we have therefore, the anomalous situation of a special guardian who is expressly permitted to continue to function for the purpose of conducting an appeal, but who is required to file an alleged "final account."

Pursuant to the above order, appellant did file his purported final account, and on May 9, 1944, the probate court made its order allowing the account and ordering him as guardian to pay and deliver to Nettie Hudson the residue of the personal property in the sum of $6,645.99. It is to be borne in mind that the appeal while pending suspended the order of restoration and that Nettie remained in law an incompetent. See, M. S. A. 525.714; In re Estate of Johnson, 194 Minn. 300, 260 N. W. 295. At the time, Nettie had no general guardian. Upon hearing of the appeal, the district court reversed the probate court's order of restoration. An appeal then followed to the supreme court, which on October 19, 1945, handed down a decision affirming the order of the district court and recognizing the right of the special guardian as such to appeal from an order of restoration. In re Guardianship of Hudson, 220 Minn. 493, 20 N. W. (2d) 330.

In the meantime, Nettie had changed her residence from Goodhue county to Dodge county. Eight days after the filing of the supreme court decision, namely, on October 27, 1945, the probate court of Dodge county, upon Nettie's petition, appointed respondent general guardian. Subsequently, on November 26, 1945, a petition by Nettie's daughter for the appointment of a general guardian was denied by and before the Goodhue county probate court, and a change of venue to Dodge county was granted. Appellant appealed from the order granting a change of venue, and on August 20, 1946, the district court by an amended order reversed the order of the probate court and changed the venue of the special guardianship proceeding back to Goodhue county for settlement and allowance of the special guardian's account.

On December 12, 1945, appellant filed with the Goodhue county probate court a purported supplemental final account covering expenses of $731.50 incurred in connection with the appeal to the district court and to this court in the restoration proceedings. Before proceeding to a consideration of a denial of this supplemental account, we must first pick up the thread of a parallel piece of litigation in the district court which grew out of the same guardianship and which in part led appellant to file on September 5, 1946, another supplemental account for expenses of $546.90. In 1944, while the appeal from the order of restoration was pending before the supreme court, Nettie commenced an action in the district court against the Farmers Security State Bank of Zumbrota to recover $5,025 which appellant in his capacity as special guardian had on deposit in that bank. On May 25, 1946, judgment in Nettie's favor was entered, and shortly thereafter the money on deposit was paid to the general guardian, respondent herein. It appears from appellant's supplemental account filed September 5, 1946, that the items of expense pertaining to such litigation were incurred subsequent to December 11, 1945, and, of course, subsequent to October 27, 1945, when the general guardian was appointed and qualified. This latter supplemental account also included certain items pertaining to the change of venue proceedings.

The probate court of Goodhue county by order dated January 18, 1947, sustained objections to any consideration of such supplemental accounts on the ground of lack of jurisdiction, in that the special guardian's final account had been heard and allowed on May 9, 1944. Upon appeal, the district court affirmed the probate court on the ground that the probate court order dated May 9, 1944, allowing appellant's final account had become final and was not subject to collateral attack. The district court also concluded that the special guardian was under no duty to oppose the restoration to capacity of Nettie, and that he maintained the appeal proceedings, contrary to the final account order, at his own expense. The parties have stipulated that if the special guardian is entitled to recover anything the amounts claimed in the two supplemental accounts are both necessary and reasonable. It is from this tangled skein of endless move and countermove that the matter is brought to this court for review.

1-2. An order of a probate court (a court of superior jurisdiction) allowing and settling a guardian's final account is a final and appealable order and cannot be attacked collaterally for want of jurisdiction (Winjum v. Jesten, 191 Minn. 294, 253 N. W. 881) not affirmatively appearing on the face of the record. Jasperson v. Jacobson, 224 Minn. 76, 27 N. W. (2d) 788. Is the order of May 9, 1944, allowing and settling the special guardian's final account subject to collateral attack for want of jurisdiction? The mere absence from the record of facts essential to jurisdiction does not render an order, judgment, or decree subject to collateral attack. The presumption of jurisdiction is conclusive unless the want thereof affirmatively appears from the record itself.[2] Before determining whether want of jurisdiction appears affirmatively, it is to be noted that lack of jurisdiction, in general, falls into three classes: (1) Jurisdiction of the subject matter; (2) jurisdiction of the persons; and (3) jurisdiction to enter the particular judgment or order entered.

[2]Jasperson v. Jacobson, 224 Minn. 76, 27 N. W. (2d) 788; Davis v. Hudson, 29 Minn. 27, 11 N. W. 136; State ex rel. Degen v. Freeman, 168 Minn. 374, 210 N. W. 14; 3 Dunnell, Dig. & Supp. § 5141; 5 *Id.* §§ 7774 and 7782.

It is well settled that a judgment or order may be void for want of authority in a court to render the particular judgment or order entered, though the court may have jurisdiction over the subject matter and the parties.[3] Here, the court clearly had jurisdiction of the subject matter and of the persons. A judgment or order of a court of competent jurisdiction cannot, however, be impeached by collateral attack on the ground of mere errors or irregularities not going to the jurisdiction of the court. 1 Freeman, Judgments (5 ed.) § 321; Laing v. Rigney, 160 U. S. 531, 16 S. Ct. 366, 40 L. ed. 525.

3. Does the lack of jurisdiction here affirmatively appear? The final account was prepared and filed in compliance with the court's order of March 9, 1944. This very same order authorized the special guardian to continue to function for the purpose of conducting the appeal from the order of restoration. "Final" means last and pertains to the end. Saylor v. Duel, 236 Ill. 429, 86 N. E. 119, 19 L.R.A.(N.S.) 377. A "final account" in a guardianship proceeding contemplates, and it is allowed and settled only on the basis, that it constitutes the last statement of all receipts and disbursements made and to be made by the guardian in his official capacity as an essential part of the procedure pursuant to which his entire authority is terminated for all purposes except that of effecting a proper distribution of assets to the ward or a surrender thereof to his successor. See, Angevine v. Ward, 66 Ind. 460; In re Estate of Kappelman, 101 Kan. 654, 168 P. 876; In re Estate of Braun, 140 Kan. 188, 34 P. (2d) 94; In re Kostohris' Estate, 96 Mont. 226, 29 P. (2d) 829; American Bonding Co. v. People, 46 Colo. 394, 104 P. 81; Dufour v. Dufour, 28 Ind. 421; 16 Wd. & Phr. (Perm. ed.) 581. A final accounting is a prelude to a termination of the guardian's official status and presupposes that his official duties have been completed.

4-5. The order of March 9, 1944, was contradictory in its terms. It continued appellant as a special guardian for the conduct of the

[3]State ex rel. Carmody v. Reed, 132 Minn. 295, 297, 156 N. W. 127-128; Sache v. Wallace, 101 Minn. 169, 112 N. W. 386, 11 L.R.A.(N.S.) 803, 11 Ann. Cas. 348, 118 A. S. R. 612; 24 Minn. L. Rev. 819; 1 Black, Judgments (2 ed.) § 215, p. 323; 1 Freeman, Judgments (5 ed.) §§ 354 and 372.

appeal, and at the same time it imposed the requirement of submitting a final account. As special guardian, appellant had a right to appeal from the order restoring Nettie to capacity. In re Guardianship of Hudson, 220 Minn. 493, 20 N. W. (2d) 330. Subsequent events demonstrated that the right was exercised providently, in that the order of restoration was reversed. The right of appeal was not to be defeated by an unwarranted termination of the special guardian's official status, and this fact was recognized by the court in its provision that he should continue to serve, though only for a limited and special purpose. The court erred, however, when it ordered the filing of a final account *by a guardian whose duties were not to terminate*. The error was jurisdictional. The court followed a procedure which, if approved, would bring about the result that a special guardian after he had made his final or last account could continue to function in his official capacity without being accountable for his future acts. An irresponsible free-lance guardian of this type is unknown to the law. Minn. Const. art. 6, § 7, vests in the probate court exclusive jurisdiction over the complete administration of guardianships, and, once the jurisdiction has been assumed, such court is without power to divest itself of jurisdiction over a guardian who continues to function for any purpose. M. S. A. 525.58 and 525.591 requires that all guardians shall, *upon the termination* of their duties, file a verified final account, with a petition for the settlement and allowance thereof. In fact, courts uniformly refuse to construe a settlement as final, although a court may have so designated and accepted and approved it as such, where the record discloses that the guardianship or estate administration had not, or could not have, been completed. See, State ex rel. Bremer v. Schulte (Mo. App.) 90 S. W. (2d) 1078; Ensign v. Faxon, 229 Mass. 231, 118 N. E. 337; In re Estate of Braun, 140 Kan. 188, 34 P. (2d) 94; Peters's Estate, 73 Pa. Super. 530; Angevine v. Ward, 66 Ind. 460; Giberson v. Henness, 219 Iowa. 359, 258 N. W. 708. The error of the court is not cured by any supposition that appellant was to prosecute the appeal at his own risk and cost. His only right of appeal arose out of his official capacity, and this right was not to

be qualified or emasculated by requiring him to proceed at his own personal expense. The value of his services and the reasonableness of his expenditures could properly be determined only after the appeal had been completed. Clearly, the court, in ordering and allowing a final account for any purpose other than that of bringing about a full termination of appellant's official status, was exercising a power not warranted by any law. An allowance and settlement of a final account of a guardian whose official powers and duties are to continue in effect thereafter for any other purpose than that of making a proper distribution or surrender of the assets as a preliminary to his discharge by the court is void for want of jurisdiction. See, Cox v. Johnson, 80 Ala. 22; Glass v. Glass, 76 Ala. 368; Angevine v. Ward, 66 Ind. 460. In making an order or entering a judgment, a court must remain within its jurisdiction and powers. 1 Freeman, Judgments (5 ed.) § 354. The principle that an order in excess of the court's powers is invalid collaterally is peculiarly applicable to probate courts. 1 Freeman, Judgments (5 ed.) § 372. It is the power or authority behind a judgment or order rather than the mere result reached which determines its validity and immunity from collateral attack. It is immaterial that appellant may have consented to the doing of an act in excess of the court's power and jurisdiction. Restatement, Judgments, § 7(d). It follows that the order of May 9, 1944, was void insofar as it purported to allow and settle a final account.

The probate court of Goodhue county therefore retains, and now has, jurisdiction to proceed with a hearing for the allowance and settlement of appellant's account as special guardian with respect to his entire period of service, inclusive of the conduct and completion of the appeal to the district and supreme courts. The appeal was completed prior to the granting of letters of general guardianship. It is to be noted that M. S. A. 525.591 provides:

"* * * Upon the granting of letters of general guardianship, the power of a special guardian shall cease, and he shall proceed forthwith to a final accounting."

Under the above statute, expenses reasonably and necessarily incurred in connection with change of venue proceedings to determine in which court the special guardian's account is to be settled may be allowed, although such proceedings occur subsequent to the appointment of the general guardian. Insofar, however, as the special guardian incurred expenses and made disbursements with respect to Nettie's action in the district court against the Farmers Security State Bank of Zumbrota, no allowance can be made for the period subsequent to the date of the granting of letters to the general guardian, in that all powers of the special guardian then ceased. Upon the appointment and qualification of a general guardian, he should have been substituted for the special guardian insofar as the latter was a party to any pending litigation.

The order of the trial court is reversed with directions to proceed in accordance with this decision.

Reversed.